BOLIN, Judge.
This suit, consolidated for trial and on appeal with No. 10,895, arose out of an automobile accident occurring July 31, 1965, near Coushatta, Louisiana. Involved in the accident were a 1961 Pontiac owned by Leo Biles and being driven by his minor daughter, Linna Faye Biles, and a 1963 Ford owned and being driven by Mrs. Grace McDowell. Plaintiff, Mrs. Selah Harville Buswell, a guest passenger in the latter automobile, suffered personal injuries in the collision. Travelers Indemnity Company, collision insurer for Mrs. McDowell, paid the sum of $464.40 to its insured for repairs to her automobile pursuant to the provisions of the collision policy. Having become sub-rogated to her rights to that extent, Travelers instituted Suit No. 10,895 against Mr. Biles to recover the $464.40, together with legal interest.
Mrs. Buswell sought to recover damages for injuries resulting from the accident in suit No. 10,894, naming as defendants Biles and Travelers Indemnity Company. Her claim against Biles was based on her allegation the accident resulted solely from negligence of his minor daughter. It is further alleged the automobile of Biles was uninsured and thus her claim against Travelers was asserted under the uninsured motorist clause oj the policy issued by Travelers to Mrs. McDowell.
Leo Biles brought in State Farm Mutual Automobile Insurance Company as third party defendant, alleging State Farm had issued to him a public liability policy which afforded coverage to both him and his daughter. Biles subsequently filed a third party demand for contribution against Travelers as liability insurer of Mrs. McDowell, contending the latter was guilty of negligence proximately contributing to the accident.
Following trial on the merits the District Judge concluded the accident resulted solely from the negligence of Linna Faye Biles; that Mrs. McDowell was free of negligence; and that the policy issued by State *167 Farm Mutual Automobile Insurance Company afforded public liability coverage for Leo Biles. Accordingly, in the subrogation suit instituted by Travelers against Biles, judgment was rendered in favor of Travelers for reimbursement of the sum paid its insured. In suit No. 10,894 judgment was rendered in favor of plaintiff, Mrs. Selah Harville Buswell and against Leo Biles in the sum of $4,398.62 and in favor of Leo Biles as third party plaintiff against State Farm Mutual Automobile Insurance Company in the like sum of $4,398.62, together with $1,200 as attorneys’ fees. Further, there was judgment rejecting the demands of Mrs. Buswell against Travelers under the uninsured motorist clause of its policy. Suspensive and devolutive appeals were perfected by State Farm Mutual Automobile Insurance Company, Leo Biles and Mrs. Sarah Harville Buswell.
In the vicinity of the accident, which occurred on U. S. Highway # 71, the highway runs generally in a north-south direction. Immediately preceding the collision Mrs. McDowell was driving her vehicle south and Linna Faye Biles was proceeding north. Linna attempted to make a left turn across the south-bound traffic lane in front of the oncoming McDowell automobile. The trial judge found the accident was caused solely by the negligence of the left-turning motorist and we conclude the evidence amply supports his finding. For this reason we shall not state the facts surrounding the accident in detail but shall proceed to a consideration of other questions presented on appeal.
On July 20, 1965, defendant Leo Biles took title in his name to a 1961 Pontiac automobile from Strange Motor Company in Coushatta, Louisiana. On that date he owned the following vehicles:
(1) A 1952 International 3-ton truck which was insured with State Farm Mutual Automobile Insurance Company under a commercial policy and with which truck and policy we are not here concerned.
(2) A 1965 Ford pickup truck insured under a policy with State Farm Mutual Automobile Insurance Company and which is the policy under which defendant is claiming coverage.
(3) A 1952 Ford pickup truck which was uninsured.
The State Farm policy relied upon by defendant Biles to afford coverage in this case contains the following pertinent provisions:
“Part I—Liability—
Coverage (A)—Bodily injury liability;
Coverage (B)—property damage liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
(A) bodily injury, sickness or disease including death resulting therefrom, hereinafter called ‘bodily injury’, sustained by any person;
(B) injury to or destruction of property, including loss of use hereof, hereinafter called ‘property damage’;
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.” * * * * * *
“Persons insured. The following are insureds under Part I:
(a) With respect to the owned automobile,
(1) The named insured and any resident of the same household,”
* * * * * *
“Definitions. Under Part I
******
*168 “ ‘Owned automobile’ means
(a) A private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
* * *
(c) A private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) It replaces an owned automobile as defined in (a) above, or
(2) The company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile * * *” (Emphasis added)
“ ‘private passenger automobile’ means a 4-wheel private passenger station wagon or jeep type automobile;
“ ‘farm automobile’ means an automobile of the truck type with a load capacity of 1500 pounds or less not used for business or commercial purposes other than farming.
“ ‘utility automobile’ means an automobile, other than a farm automobile, with a load capacity of 1500 pounds or less of the pickup body, sedan delivery or panel truck type not used for business or commercial purposes.”
******
CONDITIONS
******
“2. Premium. If the named insured disposes of, acquires ownership of, or replaces a private passenger, farm or utility automobile, or, with respect to Part III, a trailer, any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and the description thereof.”
******
“18. Declarations. By acceptance of this policy the insured named in Item I of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.”
Under the declaration portion of the policy appears a square block labeled “Item 4” wherein there was typed “2”. The purpose of Item 4 is stated in the policy as follows:
“ITEM 4-A. The total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed one, unless otherwise stated in ITEM 4 on page 1.” * * *
The question of whether there was coverage on the newly-acquired automobile may be answered only after determining whether State Farm insured all private passenger, farm or utility automobiles, as defined by the policy, owned by the named insured on the date of acquisition of the Pontiac. Mr. Biles contends a farm or utility automobile within the terms of the policy depends upon whether the vehicle had a capacity of 1500 pounds or less, and this capacity limitation refers to actual maximum load capacity. It must be conceded the testimony is conclusive that both the 1965 one-half ton pickup and the 1952 three-quarter ton pickup were capable of carrying loads in excess of 2000 pounds each without destroying the vehicle. The lower court agreed with the argument of Mr. Biles and held the 1952 Ford three-quarter ton pickup was not a farm or utility automobile, as defined in the policy, because it was possible for it to haul more than 1500 pounds.
*169 We think the lower court erred in the interpretation of the policy provision. From a reading of the entire policy we find Mr. Biles never pretended that the 1952 Ford three-quarter ton pickup truck was anything other than a private passenger, farm or utility automobile until after the accident. The number “2” appearing as a part of the declarations, under Item 4 of the policy, simply means that on the date of the policy Mr. Biles owned two farm automobiles as defined in the policy. It is undisputed that on that date he owned three vehicles and the third one, other than the two pickup trucks, was a three-ton truck insured under another commercial policy with State Farm Mutual. Therefore, under the provisions of the policy State Farm Mutual did not insure all of the private passenger, farm and utility automobiles owned by Biles on the effective date of the policy and there was no automatic coverage on the newly-acquired Pontiac involved in the accident. We find from our study of the record that this was the clear intent of both the insurer and the insured and that load capacity as contemplated by these parties was the manufacturer’s designation of the pickups as one-half ton and three-quarter ton trucks.
The public liability collision and comprehensive policy issued by Travelers covering the McDowell vehicle contained an uninsured motorist provision and, since Mr. Biles was uninsured with respect to the Pontiac, Travelers is liable in damages under the aforesaid policy provision for the personal injuries and medical expenses of Mrs. Buswell.
Plaintiff, a 57 year old woman, was painfully but not seriously injured in the accident. She received injuries to her right knee and hip, as well as bruises and abrasions. She was treated by Dr. Hucka-bay, a general practitioner at Coushatta, Louisiana, who found no fractures. She was never hospitalized but after several months of treatment Dr. Huckabay referred her to an orthopedic specialist in Shreveport. Plaintiff did not take the deposition of nor produce the specialist to testify. Under these circumstances it must be presumed his testimony would have been adverse to her claim.
Subsequent to the above referral Dr. Huckabay referred Mrs. Buswell to Dr. James W. Tucker, a surgeon in Shreveport, Louisiana. Dr. Tucker, in his examination of plaintiff, could find no objective symptoms of any permanent disability. While it is true she complained of pain, which the doctor attributed mostly to a pre-existing arthritic condition, he was unable to testify with any degree of certainty that the arthritis was caused or aggravated by the accident. At the time of the accident she was employed as a lunchroom worker in the public school system and was paid her wages from the time of the accident through December 31, 1965. For her personal injuries the lower court awarded her $4,000 which we find to be neither inadequate nor excessive.
Left for consideration is the claim for attorneys’ fees. The lower court, having found State Farm liable under its policy of insurance, awarded Mr. Biles attorneys’ fees for failure of the insurance company to defend the suit. However, this court, having found no liability on the part of State Farm must, perforce, reverse that portion of the judgment. The question now presents itself as to whether Mrs. Buswell is entitled to penalties and attorneys’ fees against Travelers under its uninsured motorist coverage for failure to recognize its liability and pay her damages under La.R.S. 22:658. We have not been cited to any authority for assessing such damages under the facts as found in the instant case. Admitting for the sake of argument penalties and attorneys’ fees could be inflicted under certain circumstances nevertheless a prerequisite to such judgment would be a finding the failure of the insurance company to pay the claim was arbitrary, capricious or without probable cause. Plaintiff herein has failed to prove arbitrariness and capricious *170 ness and for this reason the demands for attorneys’ fees are rejected.
For the reasons assigned the judgment appealed from is annulled and set aside and:
It is ordered, adjudged and decreed that the third party demands against State Farm Mutual Automobile Insurance Company be rej ected.
It is further ordered, adjudged and decreed that there be judgment in favor of Mrs. Selah Harville Buswell and against Leo Biles and Travelers Indemnity Company in solido for the sum of $4,398.62 plus legal interest thereon from judicial demand until paid, together with all costs.
Annulled and recast.